**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **3:11-CR-345** |
| | : | **(JUDGE MARIANI)** |
| **ANTONIO FIGUEREDO** | : | |
| | : | |
| **Defendant.** | : | **FILED** |
| ********************************************** | : | **SCRANTON** |
| | : | |
| | : | JUN 0 9 2026 |
| **BANK OF AMERICA, N.A.** | : | |
| | : | PER _____ 𝓚𝓡 _____ |
| **Garnishee** | : | DEPUTY CLERK |

## MEMORANDUM OPINION

### I.    BACKGROUND & PROCEDURAL HISTORY

In November 2010, DEA and IRS agents commenced an investigation into the growing of marijuana in Monroe County. The investigation revealed that co-defendant Carlos Guerra-Lescay and several other individuals, including defendant Antonio Figueredo ("Defendant"), conspired to purchase residential properties for use to grow marijuana. As relevant to Defendant, he provided false information to banking institutions in order to secure a mortgage for the purchase of a residence in Kresgeville, Pennsylvania.

On June 11, 2014, Defendant pled guilty to one count of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 371. (Docs. 397, 408). On January 29, 2015, the Court sentenced Defendant to three years of probation, including six months of home detention with electronic monitoring and ordered Defendant to forfeit $8,920 to the United States.

(Doc. 556 at 2).  Defendant was also ordered to pay restitution pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A *et seq.* ("MVRA") in the amount of $518,984.39 payable to the Clerk of Court for disbursement to Ocwen Servicing, LLC.  (*Id*).  The restitution was to be paid in monthly installments of $100.  (*Id.*) ("The defendant shall make restitution in minimum monthly installments of $100.").  As reflected in the criminal judgment, Defendant was jointly and severally liable for the $518,984.39 restitution amount along with his co-conspirators Carlos Guerra-Lescay and Vivian Cruz.[1]  (Doc. 556 at 2).

On October 23, 2019, the United States filed an Unopposed Motion to Amend/Correct Restitution Balance.  (Doc. 582).  Following the Sheriff's sale of the property which Defendant fraudulently obtained, Ocwen Servicing received $113,602.17 in net proceeds from the sale of the property.  (*Id.*, ¶¶ 4-5).  The United States thus moved "to reduce the current restitution in this matter by $113,602.17 and any additional future payments made by the defendant." (*Id.*, ¶ 6).  On November 8, 2019, the Court granted the unopposed motion and directed the Clerk of Court to reduce Defendant's restitution balance by $113,602.17.  (Doc. 582).

No activity on the docket took place between November 8, 2019, and April 3, 2026, until the United States filed an Application for Writ of Garnishment pursuant to 28 U.S.C. §

---

[1]    Defendant's co-conspirator, Vivian Cruz, also pled guilty to Conspiracy to Commit Bank Fraud and was also ordered to pay $518,984.39 in restitution to Ocwen Servicing.  (Doc. 558) at 2).  Co-conspirator Carlos Guerra-Lescay pled guilty to one count of Conspiracy to Commit Money Laundering and one count of Conspiracy to Manufacture a Controlled Substance and was sentenced to sixty months imprisonment.  (Doc. 481).  He was ordered to pay restitution in the amount of $3,317,783.98, which included $498,180.10 for which he is jointly and severally liable with Defendant and Vivian Cruz.  (*Id.* at 3).

3205(b)(1), naming as Garnishee Bank of America, N.A. (Doc. 586). As of the date of the filing of Application, the Government represented that Defendant's restitution balance was $470,509.06 and that more than thirty days had passed since the Government demanded payment. (*Id.*). In the Writ, the United States informed Bank of America:

> You are hereby required to satisfy the judgment by levying funds or assets in the amount of $15,000.00 belonging to the defendant/debtor or in which the defendant/debtor has an interest, including but not limited to funds held in trust and/or maintained in Account Number ending in 2705 or held in any other account associated with or held in trust or otherwise associated with the defendant/debtor.

(Doc. 586-2 at 2-3).

On April 7, 2026, the Court granted the Application and issued a Writ of Garnishment. (Doc. 587). On May 5, 2026, and May 7, 2026, Bank of America, as Garnishee, filed an Answer to the Writ of Garnishment. (Docs. 590, 591). In its Answer, Bank of America confessed that it holds assets of the Defendant in the amount of $18,885.93 in a checking account.[2] (*Id.*).

On May 18, 2026, Defendant filed a *pro se* Request for Hearing and Objections, asserting that certain funds in his checking account are exempt from garnishment. (Doc. 592). Defendant claims he is entitled the following exemptions:

11.  Minimum exemption for wages, salary and other income. The exemptions under 26 U.S.C. § 6334(a)(9) do not apply in criminal cases. The exemptions under the Consumer Credit Protection Act, 15 U.S.C. § 1673, for disposable earnings, automatically apply and do not need to be claimed. The aggregate disposable earnings of an individual for any workweek which is subjected to

---

[2]    The $18,8885.93 does not include Pennsylvania's "automatic exemption of $300" which "has been set aside and provided to Defendant and is not included in the amount stated above which funds are on hold for the writ." (Doc. 590 at 1).

3

garnishment may not exceed (1) 25% of his disposable earnings for that week, or (2) the amount by which his disposable earnings for the week exceed thirty times the Federal minimum hourly wage in effect at the time the earnings are payable, whichever is less.

(*Id.* at 3). No other exemptions were claimed by Defendant in his Objection form.

Defendant also submitted a letter to Court. (Doc. 592-1). In the letter, Defendant states:

As a 1099 employee and head of household, I earn a base pay of $500 per week plus commission, leading to income instability. During my communications with the Clerk of Court, I was presented with two options: pay $2,300 upfront or make money payments of $300 until the account is current, followed by $100 monthly payments as per court order.

I made my first payment of $300 on April 10, 2026. However, despite this agreement and the transparent financial statement I submitted as required by law, the garnishment proceedings began even before the negotiations took place and all the funds on the accounts are frozen.

The garnishment has caused significant financial hardship. My family and I have struggled to pay rent and had to seek assistance from our church to cover May's rent. Additionally, the garnished funds included not only my income but also my wife's earnings. She was employed until 2025 but had to leave her job due to the intensive care required for our 13-year-old son with autism, who needs constant attention and therapeutic services.

These circumstances have greatly compounded our financial difficulties. I respectfully request a hearing to address this matter and find a fair resolution. My goal is to ensure that the agreed-upon payment plan is honored and to alleviate the hardships caused by this garnishment.

Furthermore, I would ask the court if my case can be heard on a Monday, as I live in another state and will need to drive over the weekend to attend the hearing, ensuring that my new employment is not affected.

(*Id.* at 1).

4

On June 2, 2026, the Court issued an order directing the Government to submit certain documents in advance of the June 8, 2026, hearing. (Doc. 594). The Government timely complied and submitted documentation revealing that Defendant's outstanding restitution balance was $356,199.43, not $470,590.06. (Doc. 595 at 2). The discrepancy was due to the Clerk of Court's inadvertent failure to reduce the outstanding restitution balance by $113,602.17, which represented the net proceeds from the Sheriff's sale of the fraudulently obtained property. (Doc. 595 at 2).

In the eleven years since the Court ordered him to pay $518,984.39 restitution in $100 minimum monthly installments, Defendant has made only $6,342.38 in restitution payments. He has not made timely monthly restitution payments of $100 as ordered by the Court or otherwise complied with the restitution order as reflected in the following chart.[3]:

| YEAR | PAYMENTS |
|---|---|
| 2015 | 4 payments totaling $600. |
| 2016 | 11 payments totaling $1,100 |
| 2017 | 9 payments totaling $900 |
| 2018 | 6 voluntary payments plus 1 Treasury Offset Program ("TOP") payment in the amount of $574.88 totaling $1,174.88 |

---

[3]     As noted, Defendant was held jointly and severally liable for this amount along with his co-conspirators Carlos Guerra-Lescay and Vivian Cruz. The Government represents that the total amount of restitution "collected from all defendants" is $49,282.79, which includes the $6,342.38 paid by Defendant. (Doc. 595 at 4). It appears to the Court that Carlos Guerra-Lescay and/or Vivian Cruz's restitution payments represent the difference between $49,282.79 (the amount received by all defendants) and $6,342.38 (the amount paid by Defendant) for a total $42,940.41.

| 2019 | 1 voluntary payment plus 1 TOP totaling $867.50 |
| 2020 | 3 payments totaling $700 |
| 2021 | No payments made.[4] |
| 2022 | 1 payment of $100 |
| 2023 | No payments made. |
| 2024 | 6 payments totaling $600 |
| 2025 | No payments made. |
| 2026 | 1 payment of $300 (post-garnishment) |

(Doc. 595 at 3-4).

On June 8, 2026, the Court held a two-hour hearing on Defendant's Objections to the Writ of Garnishment and heard testimony from Ashley Chessman, a paralegal with the United States Attorney's Office's Financial Litigation Unit, and Defendant.

## II.    ANALYSIS

Under the MVRA, a sentencing court "shall order . . . that the defendant make restitution to victim of the offense or, if the victim is deceased, the victim's estate."[5]  18

---

[4]    "The payment history reflects a TOP payment in the amount of $3,487.25 that was originally offset and then returned and is not accounted for in the total payment sum.  Upon belief, this was automatically returned by the Department of Treasury upon application of a spouse." (Doc. 595 at 4 n.3).

[5]    Restitution payments should be made "immediately, unless in the interest of justice, the court provides for payment on a date certain or in installment."  18 U.S.C. § 3572(d).  "If the court provides for payment in installments, the installments shall be in equal monthly payments over a period provided by the court, unless the court establishes another schedule." *Id.*

U.S.C. § 3663A. Restitution, "like a term of imprisonment, is a criminal penalty." *United States v. Norwood*, 49 F.4th 189, 210 (3d Cir. 2022). "When a defendant is sentenced to pay restitution, the MVRA creates a lien—a property interest—in favor of the Government and imposes on the defendant a punitive legal obligation—i.e, a punishment." *Id.* at 219.

Restitution orders are enforced using the procedures set forth in 18 U.S.C. § 3664. Pursuant to 18 U.S.C. § 3664(m)(1)(A), "the Government may enforce a restitution order in the manner provided by subchapter B of Chapter 229, or 18 U.S.C. § 3613." *United Shusterman*, 331 Fed. App'x 994, 996 (3d Cir. 2009) (nonprecedential)). "Section 3613(a) and (f) provide that the United States may enforce a restitution order in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." *United States v. Tilley*, 2017 WL 3007799, at \*1 (E.D. Pa. July 14, 2017). Section 3613(a) provides that:

> a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that:
>
> (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
> (2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and
> (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

18 U.S.C. § 3613(a)(1)-(3).

The United States sought a writ of garnishment pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.* ("FDCPA"), which provides "the

exclusive civil procedure for the United States (1) to recover on a judgment or debt." 28

U.S.C. § 3001(a)(1).  The FDPCA provides the Government with several civil remedies to

satisfy a criminal restitution judgment, including garnishment.[6]  28 U.S.C. §§ 3202(a), 3203,

3205.  Under Section 3203(a), the United States may levy "[a]ll property in which the

judgment debtor has a substantial nonexempt interest."  28 U.S.C. §§ 3203(a).

Under 28 U.S.C. § 3202(d), a judgment debtor like Defendant may request a hearing

to quash or claim exemptions from the writ of garnishment.  The issues at such hearing

shall be limited--

(1) to the probable validity of any claim of exemption by the judgment debtor;
(2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted; and
(3) if the judgment is by default and only to the extent that the Constitution or another law of the United States provides a right to a hearing on the issue, to--
(A) the probable validity of the claim for the debt which is merged in the judgment; and
(B) the existence of good cause for setting aside such judgment
This subparagraph shall not be construed to afford the judgment debtor the right to more than one such hearing except to the extent that the Constitution or another law of the United States provides a right to more than one such hearing

28 U.S.C. § 3202(d).

The Court has already found that the United States complied with the statutory

requirements for a writ of garnishment contained in 28 U.S.C. § 3205.  (Doc. 587) ("Upon

---

[6]      28 U.S.C. § 3205(a) provides that:  "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."  28 U.S.C. § 3205(a).  Section 3205 further prescribes the practices and procedures for issuance of the writ of garnishment.  28 U.S.C. §§ 3205(b)-(c).

application of Plaintiff United States of America for a Writ of Garnishment, the Court hereby finds that the application meets the requirements of 28 U.S.C. § 3205, and grants Plaintiff's application."). Moreover, Defendant did not identify any statutory requirements that the Government has failed to comply with in his Objection.[7] Instead, in his Notice of Hearing and Objections Defendant raises an objection to "the probable validity of any claim of exemption by the judgment debtor." 28 U.S.C. § 3202(d)(1).

In a garnishment proceeding, the judgment debtor "bears the burden of establishing that his property is exempt." *United States v. King*, 2012 WL 1080297, at *5 (E.D. Pa. Apr. 2, 2012) (citing 18 U.S.C. § 3613(c)). As discussed, Defendant claims he is entitled the following exemptions:

> 11.    Minimum exemption for wages, salary and other income. ***The exemptions under 26 U.S.C. § 6334(a)(9) do not apply in criminal cases.*** The exemptions under the Consumer Credit Protection Act, 15 U.S.C. § 1673, for disposable earnings, automatically apply and do not need to be claimed. The aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25% of his disposable earnings for that week, or (2) the amount by which his disposable earnings for the week exceed thirty times the Federal minimum hourly wage in effect at the time the earnings are payable, whichever is less.

(Doc. 592 at 3) (emphasis added).

---

[7]    Nor did Defendant raise any issues with the statutory requirements of 28 U.S.C. § 3205 at the hearing. Although the Writ of Garnishment provided an incorrect amount of Defendant's total restitution balance, this inadvertent clerical error does not affect the validity of the Writ. The Writ of Garnishment did not freeze more than the Defendant's existing balance and did not amount to over-collection from Defendant. (Doc. 595 at 2).

26 U.S.C. § 6334(a) provides a list of property that "shall be exempt from levy." Relevant to Defendant's Objections, 26 U.S.C. § 6334(a)(9) shields "[a]ny amount payable to or received by an individual as wages or salary for personal services, or as income derived from other sources, during any period, to the extent that the total of such amounts payable to or received by him during such period does not exceed the applicable exempt amount determined under subsection (d)." 26 U.S.C. § 6334(a)(9).  While Defendant claims this exemption applies to the $15,000 in his checking account, 26 U.S.C. § 6334(a)(9) does not apply in criminal cases as is clearly reflected in the form he submitted raising his Objections (Doc. 592 at 3).  *See United States v. Bateman*, 2025 WL 2613379, at *4 (E.D. Mich. Sept. 10, 2025) (holding that defendant could not claim exemption under 26 U.S.C. § 6334(a)(9) because under 18 U.S.C. § 3613(a), "that exemption cannot be claimed in criminal cases because the statute did not incorporate it") (citing 18 U.S.C. § 3613(a)(1)). Because this exemption does not apply in criminal cases, *see* 18 U.S.C. § 3613(a)(1), Defendant's wages, salary, and income derived from other sources are not exempt from garnishment under 26 U.S.C. § 6334(a)(9).  Accordingly, Defendant's first objection will be overruled because Defendant cannot claim the exemption in 26 U.S.C. § 6334(a)(9) in his criminal case.

Defendant next argues in his Objections that the Government is garnishing more than permitted by 15 U.S.C. § 1673 of the Consumer Credit Protection Act ("CCPA").  This statute, entitled "[r]estrictions on garnishment," limits the garnishment on certain "earnings"

while permitting the Government to garnish up to "25 per centum of his disposable earnings for that week."[8]  15 U.S.C. § 1673(a)(1).  For this exemption to apply, Defendant first must demonstrate that the $15,000 in his checking account constituted "earnings" or "disposable earnings" within the meaning the CCPA.  The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and include periodic payments pursuant to a pension or retirement plan."  15 U.S.C. § 1672(a).  "Disposable earnings" is defined as "the part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."  15 U.S.C. § 1672(b).

Here, the Government is not seeking to garnish Defendant's wages, earnings, or disposable earnings.  Rather, it seeks to garnish funds in Defendant's checking account held by Bank of America.  Although Defendant appears to claim that the $15,000 garnishment of his checking account is greater than 25% of his yearly earnings for tax year 2025 by submitting a Form 1099 indicating he earned $42,272.01 in 2025 (Doc. 592-1 at 9), that is irrelevant to the issue before the Court.  "Once earnings are deposited into a financial institution, they are no longer protected from garnishment under Section 1673(a)." *United States v. Valencia*, 2024 WL 5301786, at *5 (N.D. Tex. Oct. 7, 2024) (citing *Kokoszka v.*

---

[8]    Alternatively, the Government's garnishment may not exceed "the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less."  15 U.S.C. § 1673(a)(1).  "In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)." *Id.*

*Bedford*, 417 U.S. 642, 651 (1974) (the term "earnings" as used in 15 U.S.C. §§ 1672 and 1673 do "not pertain to every asset that is traceable in some way to such compensation"); *see also United States v. Fisher*, 2018 WL 6307901, at *4 (C.D. Cal. Nov. 1, 2018) (overruling objection under CCPA, finding that "amounts held on deposit are treated differently than earnings, and are not subject to the 25% limitation of the CCPA"); *United States v. Armstrong*, 2005 WL 937857, at *4 (N.D. Tex. Apr. 21, 2005) ("Federal courts interpreting the CCPA earnings exemption and state courts interpreting its state law equivalents have consistently held that payments that would otherwise constitute earnings lose their status as earnings once they pass to the hands or bank accounts of the debtor.") (collecting cases). Accordingly, Defendant's objection will be overruled because he has not met his burden to demonstrate the $15,000 garnishment of his checking account violated the CCPA's 25% cap on garnishment of disposable earnings or that the CCPA applies to limit the amount of garnishment.[9]

While the majority of hearing addressed Defendant's financial hardship, "federal courts have recognized that financial hardship, in and of itself, does not warrant relief

---

[9] Defendant assertions that his wife deposited her earnings in the checking account in 2025 does not change the Court's analysis that the $15,000 held in his checking account by Bank of America is not exempt from garnishment. (Doc. 592-1 at 1). Nor does Defendant's testimony that the amount in his checking represents certain funds he received as an inheritance alter the Court's findings on his Objections to the Writ of Garnishment. In either case, Defendant has not met his burden to demonstrate that these funds are exempt from garnishment.

because it is not a permissible defense to garnishment."[10] *United States v. Sylvester*, 2026 WL 1229066, at *4 (M.D. Pa. May 5, 2026) (internal citation and quotation marks omitted) (collecting cases). Nevertheless, pursuant to 28 U.S.C. § 3013, "[t]he court may at any time on its own initiative or on the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." *Id.* Also known as the FDCPA's "hardship provision," *King*, 2012 WL 1080297, at *6, the statute "[o]n its face . . . endows the trial court with broad discretion to limit the Government's enforcement powers." *Id.* Courts have applied "a concept of reasonableness to the exercise of § 3013 authority" and should take into account the individual's garnishee's circumstances. *United States v. Ogburn*, 499 F. Supp. 2d 28, 30 (D.D.C. 2007) (collecting cases).

At the hearing, Defendant did not present sufficient information regarding the full details of his income and expenses to permit the Court to assess whether modification of

---

[10]    Defendant does not move to modify his restitution payments schedule under 18 U.S.C. § 3664(k), which provides:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

(*Id.*)

garnishment order is warranted.[11]  *See United States v. Cooper*, 2026 WL 1001881, at *2

(E.D. Tenn. Mar. 16, 2026) (court could not modify garnishment ordered "because

Defendant presents no information regarding the details of her income or expenses to

permit the Court to assess the reasonableness of her claims"); *see also United States v.*

*Hardy*, 2025 WL 3628625, at *3 (W.D. Wash. Dec. 15, 2025) (construing *pro se* objections

to garnishment "as a motion to limit the garnishment under 28 U.S.C. § 3013" and finding

defendant "did not submit evidence that her economic circumstances have deteriorated to

the point that garnishment should be limited to $25 per month").

In addition, the Court's consideration of the totality of the circumstances do not

warrant modification of the Writ of Garnishment.  Defendant is not current on his restitution

balance and has not made a good faith attempt to satisfy his outstanding restitution balance

for many years.  As such, the Court finds he is not entitled to any relief under § 3013.  *See*

*United States v. Idemudia*, 2022 WL 4636025, at *4-5 (M.D. Pa. Sept. 30, 2022) (refusing to

modify writ of garnishment where defendant "eschewed making any further voluntary

restitution payments for the past five years"); *see also United State v. Anada*, 2025 WL

3734016, at *3 (E.D. Pa. Dec. 26, 2025) ("The facts of this case simply do not support an

---

[11]    For example, in a letter attached to his Objections Defendant represents that he earns $500 per week plus commission. (Doc. 591-1 at 1).  However, Defendant presented no testimony at the hearing regarding the source of his earnings and commissions and did not present testimony regarding how much commissions he earns.  As for expenses, Defendant provided testimony that his rent cost $2,300 per month and that he lives with his spouse and their two children.  Moreover, Defendant further testified that he spends either $1,100 per month (or week) for ABA therapy for his thirteen-year-old son with autism, though his testimony on this issue was far from clear.  Defendant further testified that he had to cancel his health insurance because he could no longer afford to pay for it.

exercise of the Court's discretion to limit the Writ of Garnishment based on financial hardship.").

### III.    CONCLUSION

For the foregoing reasons, the Court overrules Defendant's Objections to the Writ of Garnishment.  Bank of America, as Garnishee, will be ordered to pay $15,000 the United States from Defendant's checking account ending in 2705.  Bank of America will be further ordered to unfreeze Defendant's checking account ending in 2705 and permit Defendant access to the remaining balance of $3,885.93.  A separate Order follows.

Robert D. Mariani
United States District Judge